UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYNTHIA VAUGHAN,

           Petitioner,

-against-

UNITED STATES OF AMERICA,

           Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/17

## ORDER

13 Civ. 1862 (PGG)(FM)

10 Cr. 233 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        On March 19, 2013, Cynthia Vaughan filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel by her trial attorney, David Goldstein. (Dkt. No. 1)[1] On April 24, 2013, this Court referred the petition to Magistrate Judge Frank Maas for a Report and Recommendation ("R & R"). (Dkt. No. 5) On July 19, 2016, Judge Maas issued an R & R recommending that the petition be denied. (R & R (Dkt. No. 11)) For the reasons stated below, this Court will adopt the R & R in its entirety, and Vaughan's petition will be denied.

## BACKGROUND

        On March 18, 2010, Vaughan was charged in Indictment 10 Cr. 233 with three counts of bank fraud, in violation of 18 U.S.C. § 1344. Vaughan is the former chief executive officer of the Rockland Employees Federal Credit Union, and she was charged with embezzling funds from the Credit Union. (Dkt. No. 10 in 10 Cr. 233)

        On May 12, 2011, Vaughan pleaded guilty before Magistrate Judge George

---

[1] Except where otherwise noted, the page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system in 13 Civ. 1862.

Yanthis to Count One of the Indictment. (May 12, 2011 Plea Tr. (Dkt. No. 7-3) at 14–17) During Vaughan's allocution, Judge Yanthis advised Vaughan of, inter alia, the rights she would be giving up if she pleaded guilty (id. at 12-16), and the consequences of pleading guilty, including the possibility of a maximum sentence of 30 years' imprisonment. (Id. at 8) Vaughan told Judge Yanthis that no one had threatened her, coerced her, or "put any pressure on [her] . . . to get [her] to plead guilty"; that she had "had enough time to discuss [the plea agreement] with [her] attorney"; and that no one had "force[d] [her] or coerce[d] [her] or threaten[ed] [her] or promise[d] [her] anything to get [her] to sign the plea agreement." (Id. at 5-7, 17-19)

During her allocution, Vaughan admitted that – between October 2000 and June 2006 – while she was the Chief Executive Officer of the Rockland Employees Federal Credit Union, she transferred the Credit Union's funds into her own accounts without authorization. (Id. at 18-19) Vaughan also admitted that she "knew that the transfers were not legitimate at the time." (Id. at 18) She further admitted that she used the transferred funds for her own personal expenses. (Id. at 20-21)

In the plea agreement, Vaughan agreed not to appeal or collaterally challenge any sentence of 30 months' imprisonment or less. (Plea Agr. (Dkt. No. 7-2) at 4; May 12, 2011 Plea Tr. (Dkt. No. 7-3) at 10-11) Vaughan also agreed not to appeal any order of restitution in the amount of $150,000 or less. (Plea Agr. (Dkt. No. 7-2) at 4; May 12, 2011 Plea Tr. (Dkt. No. 7-3) at 12)

On September 8, 2011, this Court accepted Vaughan's guilty plea. (Dkt. No. 52 in 10 Cr. 233) This Court sentenced Vaughan to 18 months' imprisonment and three years of supervised release, and ordered her to pay $150,000 in restitution. (See Judgment (Dkt. No. 53 in 10 Cr. 233)) The judgment of conviction was entered on September 9, 2011. (Id.)

2

On September 15, 2011, Vaughan filed a pro se notice of appeal. (Notice of Appeal (Dkt. No. 59)) On April 3, 2012, Randall Douglas Unger – who had been appointed to represent Vaughan for purposes of her appeal – filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that there were no non-frivolous issues to raise on appeal and, accordingly, requesting permission to withdraw as counsel. (Dkt. No. 30 in No. 11-3958-cr) The Government then moved to dismiss Vaughan's appeal. (Dkt. No. 46 in No. 11-3958-cr)

On August 3, 2012, Vaughan filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Dkt. No. 1 in 12 Civ. 6129) Because Vaughan's direct appeal was pending at that time, Vaughan's petition was premature. Accordingly, this Court dismissed the petition without prejudice. (Sept. 7, 2012 Order (Dkt. No. 4 in 12 Civ. 6129) at 3)

On January 14, 2013, the Second Circuit granted the Government's motion to dismiss Vaughan's appeal. (Dkt. No. 61 in No. 11-3958-cr)

On March 19, 2013, Vaughan filed the instant petition under 28 U.S.C. § 2255. (Dkt. No. 1) Vaughan argues that her trial counsel, David Goldstein, was ineffective because he (1) had a conflict of interest (Pet. at 3–10);[2] (2) coerced her into pleading guilty (id. at 13–15); (3) did not provide adequate advice regarding the plea agreement (id. at 10-15); (4) did not present mitigating evidence in a timely fashion (id. at 5-6, 11-12); (5) failed to conduct a timely interview of a key witness (id. at 6-7, 10-12, 14-15); and (6) failed to assist in the prosecution of her appeal. (Id. at 15-16)

On April 24, 2013, this Court referred Vaughan's petition to Judge Maas for an R

---

[2] Vaughan's memorandum of law in support of her Petition has been filed on this District's Electronic Case Filing system in three parts: Dkt. Nos. 1, 1-1, and 1-2. To avoid confusion, this Order cites to the Petition's page numbers as they are printed at the bottom of each page rather than to the page numbers designated by the Electronic Case Filing system.

& R. (Dkt. No. 5) On July 19, 2016, Judge Maas issued an R & R recommending that the petition be denied. (R & R (Dkt. No. 11) at 25) Judge Maas informed Vaughan that she had fourteen days from service of the R & R to file any objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, and that "failure to file . . . timely objections will result in a waiver of those objections for purposes of appeal." (Id. at 25-26) No objections to the R & R were filed.

## DISCUSSION

### I.  STANDARD OF REVIEW

Because Vaughan did not file an objection to Judge Maas's R & R, she has waived her right to de novo review by this Court. See Thomas v. Arn, 474 U.S. 140, 147–48 (1985); see also Razo v. Astrue, No. 04 Civ. 1348 (PAC) (DF), 2008 WL 2971670, at *2 ("For uncontested portions of the R & R, the court need only review the face of the record for clear error." (citing Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003))); Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").

This Court has nonetheless reviewed Judge Maas's R & R and is satisfied that there is no clear error on the face of the R & R. See Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In her petition, Vaughan argues that she received ineffective assistance of counsel in connection with her guilty plea and sentencing. (Pet. (Dkt. No. 1))

In considering Vaughan's ineffective assistance claims, Judge Maas correctly applied the two-prong test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires Vaughan to first establish that her attorney's performance was so deficient that it "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, Vaughan must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As Judge Maas explained, in the context of a guilty plea, Vaughan must demonstrate under the second prong that "but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700.

### A. Conflict of Interest

Vaughan claims that her trial counsel, David Goldstein, had a conflict of interest, because – after Vaughan failed to pay him in accordance with their retainer agreement – Goldstein "began to cut his efforts [in representing Vaughan] short." (Pet. at 7-10) Judge Maas concluded that "even if Vaughan were able to establish that a conflict . . . existed, she has not shown that the conflict influenced Mr. Goldstein's advocacy." (R & R (Dkt. No. 11) at 15)

In order to prevail on an ineffective assistance of counsel claim on the basis of a conflict of interest, Petitioner must establish "'(1) an actual conflict of interest that (2) adversely

5

affected h[er] counsel's performance.'" LoCascio v. United States, 395 F.3d 51, 56 (2d Cir. 2005) (quoting United States v. Schwarz, 283 F.3d 76, 91 (2d Cir. 2002)); see R & R (Dkt. No. 11) at 15. To show that an alleged conflict adversely affected her lawyer's performance, a petitioner "must demonstrate [both] the existence of some 'plausible alternative defense strategy not taken up by counsel,'" LoCascio, 395 F.3d at 56 (quoting United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000)), and that "'trial counsel chose not to undertake [the alternative strategy] because of his conflict.'" Id. at 56–57 (quoting Winkler v. Keane, 7 F.3d 304, 309 (2d Cir. 1993)). Where a petitioner makes such a showing, "prejudice [under the second prong of Strickland] is presumed." Id. at 56.

Here, Goldstein sought leave to withdraw as counsel once Vaughan stopped making payments under their retainer agreement; this Court denied his request. (Apr. 11, 2011 Tr. (Dkt. No. 73 in 10 Cr. 233) at 2) The record demonstrates, however, that Goldstein actively prepared for trial after his request to withdraw was denied. (See R & R (Dkt. No. 11) at 16–17) For example, after this Court denied his motion to withdraw, Goldstein submitted motions in limine, filed an opposition to the Government's motion in limine, submitted requests to charge, and submitted proposed voir dire. (See Dkt. Nos. 38-41, 44 in 10 Cr. 233) Goldstein also participated in a lengthy pre-trial conference, at which he argued the motions in limine. Goldstein also prepared approximately 300 exhibits for use at trial. (See May 9, 2011 Tr. (Dkt. No. 75 in 10 Cr. 233) at 46-47)

Moreover, as Judge Maas explained, Goldstein's recommendation that Vaughan plead guilty came only after all of these pre-trial preparations, when Goldstein learned that Vaughan had attempted to suborn perjury. (R & R (Dkt. No. 11) at 17–18) "Throughout the proceedings, [Vaughan had] indicated [to Goldstein] how the testimony of [Collin Morris] would

6

help her case." (Goldstein Decl. (Dkt. No. 9) ¶ 3) Vaughan told Goldstein that Morris would testify that a $1,254 purchase – which the Government claimed was fraudulent – was a legitimate business expense. (See Pet. at 6) Shortly before trial, however, Goldstein learned that Morris would testify that (1) a document that Vaughan had claimed was prepared by Morris was in fact "an altered document" that Morris had not prepared; and (2) Morris "was contacted by Ms. Vaughan[,] who told him to change his testimony, which would result in him lying to the Court." (Goldstein Decl. (Dkt. No. 9) ¶ 4) The Government informed Goldstein that "[b]oth of these facts would be brought forth by the prosecution at trial." (Id.) After confirming with Morris that he would testify as the Government had represented, Goldstein concluded that "[s]uch testimony would be devastating . . . to Ms. Vaughan's case," and he recommended that she plead guilty. (Id.)

Judge Maas concluded that – even if Vaughan could show that (1) Goldstein had an actual conflict resulting from Vaughan's failure to pay him, and (2) going to trial, rather than pleading guilty, constituted a plausible alternative defense strategy – "[i]n these circumstances, Vaughan cannot show . . . that Mr. Goldstein's advice not to proceed to trial arose out of an actual conflict of interest rather tha[n] the strength of the Government's case." (R & R (Dkt. No. 11) at 18)

This Court finds no clear error in Judge Maas's determination that "[t]he alleged actual conflict of interest . . . is not a basis for granting [Vaughan] relief." (Id.)

**B. Coerced Plea**

Vaughan argues that Goldstein was ineffective because he gave her insufficient time to make a decision about pleading guilty, and coerced her to plead guilty. (See Pet. at 13-14; id. at 14 ("[Vaughan], who wanted to go to trial, believed that counsel was ineffective when

he rushed her into this deal without her having the benefit of assimilating the details.'"))

As an initial matter, "the imposition of a deadline by which a defendant must accept or reject a plea [is not] considered undue pressure[,] as pleas in both state and federal court are commonly subject to time limits." Alexis v. Smith, No. 03 Civ. 391 (IS) (AS), 2003 WL 22434154, at *5 (S.D.N.Y. Oct. 24, 2003) (citing Rosa v. United States, 170 F. Supp. 2d 388, 405 (S.D.N.Y. 2001)); see United States v. Hardimon, No. 10 Cr. 30170 (MJR), 2011 WL 925859, at *5 (S.D. Ill. Mar. 15, 2011), aff'd, 700 F.3d 940 (7th Cir. 2012) ("there is nothing unseemly about setting a deadline to accept a plea offer").

The test for evaluating whether a guilty plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." N. Carolina v. Alford, 400 U.S. 25, 31 (1970) (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969); Machibroda v. United States, 368 U.S. 487, 493 (1962); Kercheval v. United States, 274 U.S. 220, 223 (1927)); see R & R (Dkt. No. 11) at 18. "When evaluating the voluntariness of a guilty plea, a habeas court must examine the totality of the circumstances surrounding that plea." Joseph v. Fischer, No. 02 Civ. 4809 (NRB), 2003 WL 68032, at *5 (S.D.N.Y. Jan. 7, 2003) (citing Henderson v. Morgan, 426 U.S. 637, 644-45 (1976)).

In evaluating the voluntariness of a plea, statements made in open court during the plea proceeding "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) ("testimony [at a plea hearing] carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."); Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (statements made at a plea hearing "are

generally treated as conclusive in the face of the defendant's later attempt to contradict them").

Here, during the plea proceeding before Judge Yanthis, Vaughan stated that no one had "force[d] [her] or coerce[d] [her] or threaten[ed] [her] or promise[d] [her] anything to get [her] to sign the plea agreement" (May 12, 2011 Plea Tr. (Dkt. No. 7-3) at 7), and that no one "threatened [her] or coerced [her] to get [her] to plead guilty" or "put any pressure on [her] . . . to get [her] to plead guilty." (Id. at 17) Vaughan also represented that she had "had enough time to discuss [the plea agreement] with [her] attorney and to go over it with [her] attorney."[3] (Id. at 6) After admitting that between October 2000 and June 2006 – while she was the Chief Executive Officer of Rockland Employees Federal Credit Union – she transferred Credit Union funds into her own accounts without authorization (see id. at 18–19), Vaughan confirmed that she was "pleading guilty to th[e] charge because [she] [was], in fact, guilty of the crime charged." (Id. at 19)

This Court agrees with Judge Maas that "there is no basis for concluding that Vaughan was coerced into accepting the [Plea] Agreement." (R & R (Dkt. No. 11) at 21)

C. **Adequacy of Advice Concerning the Plea**

Vaughan also claims that Goldstein was constitutionally ineffective in recommending that she accept the Government's plea offer. (See Pet. at 10-15) Judge Maas concluded, however, that, under the circumstances, "it was eminently reasonable" for Goldstein to advise Vaughan to accept the proposed plea. (R & R (Dkt. No. 11) at 24)

As Judge Maas noted, "[i]n this Circuit, a defense lawyer must always communicate the terms of a plea offer to a defendant." (R & R (Dkt. No. 11) at 21 (citing Pham

---

[3] As Judge Maas notes, Vaughan's claim that Goldstein "rushed her into th[e] [plea] deal" is refuted both by her allocution and by Goldstein's declaration. (See Goldstein Decl. (Dkt. No. 9) ¶ 7)

9

v. United States, 317 F.3d 178, 182 (2d Cir. 2003); Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999))). "Additionally, 'defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty.'" Meszaros v. United States, No. 14 Civ. 1076 (JFB), 2016 WL 4275397, at *12 (E.D.N.Y. Aug. 15, 2016) (quoting Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000)). "Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because . . . '[t]here are countless ways to provide effective assistance in any given case." Purdy, 208 F.3d at 45 (quoting Strickland, 466 U.S. at 693).

Here, Vaughan argues that Goldstein was ineffective in recommending that she enter into a plea agreement that contained a $150,000 stipulated loss amount (see Plea Agr. (Dkt. No. 7-2) at 2). Vaughan asserts that "some type of evidentiary hearing . . . could [have] substantially lower[ed] the $150,000 that the prosecutor had on the table." (Pet. at 9–10)

Vaughan herself acknowledges, however, that the Government was unwilling to agree – in the context of a plea bargain – to an evidentiary hearing at which Vaughan could contest the loss amount. (See Pet. at 12) Goldstein cannot be found ineffective for not recommending an option that was never, in fact, available to Vaughan. See Sanchez v. United States, No. 3:12 Civ. 1562 (JCH), 2013 WL 3305796, at *3 (D. Conn. June 27, 2013) (counsel was not ineffective for "fail[ing] to obtain a plea agreement" when "an agreement was not possible" (citing Morgan v. United States, No. 06 Civ. 1247 (JG), 2009 WL 1172849, at *7 (E.D.N.Y. May 1, 2009) (defense counsel was not ineffective in failing to secure a Section 5K1.1 motion from the Government, because the Government was not willing to enter into a cooperation agreement with petitioner))).

10

Vaughan argues, however, that the $150,000 stipulated loss amount in the plea agreement is greater than the loss amount charged in Count One of the Indictment, to which she pleaded guilty. (See Pet. at 12-13) The loss amount properly considered at Vaughan's sentencing was not limited to the loss amount associated with Count One, however. Vaughan was also responsible for the losses resulting from the conduct charged in Counts Two and Three, because all of this conduct was part of the "'same course of conduct or common scheme or plan.'" (R & R (Dkt. No. 11) at 22 (quoting U.S.S.G. § 1B1.3(a)(2) and citing U.S.S.G. § 1b1.3(a)(1)(A), 1B1.3 (Application Note 3)) Under the Sentencing Guidelines, "two or more offenses . . . constitute part of a common scheme or plan [when they are] . . . substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." § 1B1.3 (Application Note 9).

Here, as Judge Maas observed, all three counts of the Indictment involved a common scheme or plan in which Vaughan embezzled money from the Rockland Employees Federal Credit Union, her employer. (See Indictment ¶¶ 1-3 (Dkt. No. 10 in 10 Cr. 233)) The stipulated loss amount thus properly reflected the total amount of losses the Credit Union sustained as a result of Vaughan's fraud. (See Presentence Investigation Report (Dkt. No. 35 in No. 11-3958-cr) ¶¶ 10, 13, 15 (Credit Union suffered $150,000 in losses as a result of Vaughan's fraud))

Accordingly, "it plainly was not improper for Mr. Goldstein to advise Vaughan to accept the Plea Agreement, which stipulated to the total loss amount attributable to all three counts of the Indictment." (R & R (Dkt. No. 11) at 23)

### D. Mitigation Evidence

Vaughan argues that Goldstein was ineffective in failing to present mitigation

evidence to the prosecutor, Assistant U.S. Attorney Douglas Bloom. (See Pet. at 5-6, 11-12) Vaughan contends that she hired a forensic accountant who furnished Goldstein with "substantial mitigating evidence on [all] counts of the instant indictment," but that – "to [her] knowledge" – Goldstein failed to timely provide this evidence to the prosecutor.[4] (Id. at 5-6)

Goldstein and AUSA Bloom have submitted declarations that refute Vaughan's claims, however. Goldstein states that he had "numerous conversations" with AUSA Bloom "regarding mitigation, all in an effort to reach a possible resolution of this matter." (Goldstein Decl. (Dkt. No. 9) ¶ 8) AUSA Bloom confirmed that "[t]hroughout the course of the proceedings leading up to the anticipated trial . . . Goldstein . . . repeatedly presented to the Government evidence that some of the money that Vaughan misappropriated from the credit union was for purchases made for goods and services on . . . behalf of the credit union." (Bloom Decl. (Dkt. No. 8) ¶ 2) Accordingly, Goldstein presented to the AUSA the mitigation evidence cited by Vaughan.

In any event, there is no reason to believe that the outcome of Vaughan's case would have been different if Goldstein had presented additional mitigation evidence to AUSA Bloom. (See Bloom Decl. (Dkt. No. 8) ¶ 2) As the Government notes, "[w]hile some of the money that the defendant spent from her personal account was used for credit union business, a substantial amount was not. Rather, the defendant spent it on her mortgage, vacations, nail treatments, clothing, her daughter's college tuition, her high school reunion, and detailing a personal car." (Resp. Mem. (Dkt. No. 7) at 21) In sum, Vaughan – the chief executive officer of the Credit Union – stole money from her employer. The fact that she chose to spend some of the

---

[4] The alleged "substantial mitigating evidence" cited by Vaughan consists of cancelled checks, vendor invoices, and credit card receipts relating to Vaughan's Credit Union vehicle or to goods and services Vaughan allegedly purchased for the Credit Union. (Id. at Exs. B, C)

money she misappropriated on goods or services used by the Credit Union does not excuse her theft of other Credit Union funds, which she then used to pay her mortgage and to pay for her vacations, clothing, and other personal expenses. (Id.) There is no reasonable probability that the outcome of Vaughan's case would have been different had Goldstein presented additional mitigation evidence to the Government.

This Court agrees with Judge Maas that Goldstein's alleged failure to present certain mitigation evidence to the Government does not provide a basis for granting Vaughan's petition. (See R & R (Dkt. No. 11) at 12–13)

### E. Timeliness of Witness Interview

Vaughan claims that Goldstein was ineffective because he failed to timely interview Collin Morris, an allegedly critical witness. (See Pet. at 6–7, 10–12, 14–15) According to Vaughan, a day after Goldstein interviewed Morris – and five days before trial – Goldstein informed Vaughan that she should consider pleading guilty. (See Pet. at 6, 13) Vaughan argues that if Goldstein had interviewed Morris earlier, she would have pleaded guilty earlier, and thus received an additional one-level reduction for acceptance of responsibility. (See Pet. at 11)

Morris is a "vendor of computer equipment and services who did business with the [Credit Union]." (Pet. at 6) Vaughan told Goldstein that Morris would testify that a $1,254 purchase authorized by Vaughan was legitimate. (See Goldstein Decl. (Dkt. No. 9) ¶ 3; Pet. at 13) Goldstein interviewed Morris five days before trial. (See Pet. at 6) At that time, Goldstein learned that "Morris did not support [Vaughan's] story" concerning the $1,254 invoice. (Id. at 13) After interviewing Morris and speaking with AUSA Bloom, it became clear to Goldstein that Morris would testify that the $1,254 invoice was an "altered document" that was not

prepared by Morris. (See Goldstein Decl. (Dkt. No. 9) ¶ 4) Moreover, Morris was prepared to testify that he had been "contacted by Ms. Vaughan[,] who told him to change his testimony, which would result in him lying to the Court." (Id.) Contrary to Vaughan's representation that Morris would provide exculpatory evidence, Goldstein learned – during his interview of Morris – that his testimony would be "devastating." (Goldstein Decl. (Dkt. No. 9) ¶ 4)

"As a general matter, the decision of whether or not to contact a potential witness is considered a tactical decision that 'ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel.'" Speringo v. McLaughlin, 202 F. Supp. 2d 178, 192 (S.D.N.Y. 2002) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)). Judge Maas concluded that – although Goldstein did not interview Morris until shortly before trial – his failure to do so earlier was well within the bounds of reasonable advocacy, given that Morris's testimony concerned only $1,254 of the $150,000 in alleged fraud. (See R & R (Dkt. No. 11) at 14)

Moreover, Goldstein had no reason to believe that Morris would be a critical witness at trial, because Vaughan had misrepresented the nature of his testimony. Having suborned perjury, Vaughan cannot credibly complain that her lawyer was constitutionally ineffective in not anticipating that a witness she had described as having exculpatory information would instead prove to be a devastating witness. See Strickland, 466 U.S. at 690 ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct'"); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Lockhart v. Fretwell, 506 U.S. 364 (1993)) (the court "may not use hindsight to second-guess [defense counsel's] strategy choices").

This Court finds no clear error in Judge Maas's determination that Goldstein was

14

not constitutionally ineffective in failing to interview Morris earlier. (R & R (Dkt. No. 11) at 14)

F.  **Assistance on Appeal**

Vaughan also contends that Goldstein was ineffective in failing to assist her in prosecuting an appeal. (See Pet. at 15–16)

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id.

Here, Vaughan – proceeding pro se – filed a timely notice of appeal, and the Second Circuit appointed counsel to represent her. (See Dkt. No. 59 in 10 Cr. 233; Dkt. No. 30 in 11 Cr. 3958) Vaughan's appellate attorney filed an Anders brief, however, after concluding that Vaughan had no non-frivolous issue to raise on appeal. (See Dkt. No. 30 in 11 Cr. 3958) On January 14, 2013, the Second Circuit granted the Government's motion to dismiss Vaughan's appeal. (Dkt. No. 61 in No. 11-3958-cr)

Assuming arguendo that Vaughan told Goldstein that she wanted to appeal, and that Goldstein failed to consult with her regarding an appeal, Vaughan has not demonstrated that she suffered any prejudice as a result. Vaughan filed a timely appeal and a lawyer was appointed to represent her. That lawyer concluded that Vaughan had no non-frivolous issue to raise on appeal, and the Second Circuit agreed. Given these circumstances, Judge Maas properly

concluded that Vaughan has not demonstrated that she suffered any prejudice from Goldstein's alleged failure to assist in her appeal. See, e.g., Wilens v. Superintendent of Clinton Corr. Facility, No. 11 Civ. 1938 (JFB), 2014 WL 28995, at *13 (E.D.N.Y. Dec. 31, 2013) (petitioner suffered no prejudice where counsel had not consulted with petitioner regarding an appeal, but petitioner had nonetheless filed a timely appeal pro se, had appellate counsel appointed to represent him, and had his appeal heard and denied) (citing Flores-Ortega, 528 U.S. at 484 ("counsel's deficient performance must actually cause the forfeiture of the defendant's appeal")).

## CONCLUSION

For the foregoing reasons, Vaughan's petition for a writ of habeas corpus is denied. The Clerk of Court is directed to close this case.

Dated: New York, New York  
　　　　February 1, 2017

SO ORDERED.

_____  
Paul G. Gardephe  
United States District Judge